JULIA A. TRAVERS, SUSIE LINEBAUGH and JOSEPH FRAZIER, individually, and as Executors' and Trustees under the last will and testament of EDWARD MARION HENDRY, deceased, *Appellants*, v. T. M. STEVENS, *Appellee*.

145 So. 851

Opinion Filed, January 11, 1933.

Rehearing Denied January 31, 1933.

12

*Shepard and Clements, J. W. Frazier, Jr.,* and *J. Winfield Hendry,* for Appellants;

*Treadwell & Treadwell,* for Appellee.

DAVIS, Commissioner.—On February 26th, 1927, J. W. McWilliams Company, a corporation, being the owner of certain timber lands and personal property, executed and delivered a mortgage thereon for $300,000.00 to William B. Taylor as Trustee, which mortgage was duly recorded. On November 14th, 1927, the appellants obtained a judgment against the J. W. McWilliams Company for $7,388.13 and on November 14th, 1928, appellants obtained another judgment against the J. W. McWilliams Company in the sum of $8,148.81. The said judgments were recorded in the public records on November 23, 1927, and, on November 19th, 1928, respectively. On June 13th, 1929, the said J. W. McWilliams Company sold the timber on the lands and also the personal property to Dowling-Camp Lumber Company, a corporation, for $405,000.00, of which amount $50,000.00 was paid to South Florida Land Company to satisfy a vendor's lien thereon, and the balance was to be paid in thirty-seven installments which were represented by as many promissory notes, payable to the order of J. W. McWilliams Company. Simultaneously with the execution and delivery of the notes and mortgage executed by the Dowling-Camp

Lumber Company and as a part of the same transaction, William B. Taylor, as trustee, by an instrument under seal, released and forever discharged from the lien of his mortgage or trust deed, the land and timber involved in this litigation, the consideration for such discharge being one dollar lawful money of the United States of America, and also an assignment to him as such Trustee of the notes and mortgage which the said J. W. McWilliams Company received as evidence of a portion of the purchase price for such property, "all in such manner as to substitute such notes and mortgage for the property hereby released as security for the indebtedness secured by said trust deed" to him as trustee, and also as a part of the same transaction, J. W. McWilliams Company assigned to William B. Taylor, as Trustee, the notes and mortgage executed by Dowling-Camp Lumber Company as collateral security for the debt due by J. W. McWilliams Company to William B. Taylor, as Trustee. It is agreed by the parties that the mortgage to Taylor, as Trustee, was acquired by the appellee (Complainant in the lower court) and has been foreclosed. It is also agreed that the Complainant is "now the owner and holder of the Dowling-Camp Lumber Company notes and mortgage" sought to be foreclosed in this cause, he having acquired the same at a sale by the pledgee, William B. Taylor, as Trustee, with the knowledge that said notes and mortgage were delivered to Taylor, as Trustee, "as substituted security for the timber, which Taylor released from the operation of the first mortgage, and that Taylor accepted the notes and mortgage of the Dowling-Camp Lumber Company simultaneously with the release of the property herein involved from his first mortgage and as and for the consideration of said release." The assignment of the Dowling-Camp Lumber Company notes and mortgage to Taylor contains, among others, the following recitals:

"WHEREAS, as' a part of the said sale to the said The Dowling-Camp Lumber Company the said J. W. McWilliams Company agreed not only to secure the said release from the said William B. Taylor, as Trustee, but also to protect the said The Dowling-Camp Lumber Company against loss and damage by reason of the aforesaid unpaid taxes and/or the aforesaid amount owing to the said South Florida Land Company; and,

"WHEREAS, one element of the agreement under which the said J. W. McWilliams Company secured said release from William B. Taylor as Trustee aforesaid was and is that the notes and mortgage hereinafter assigned to him would be substituted for the property released as aforesaid, thus securing the unpaid portion of the indebtedness secured by the aforesaid mortgage in the form of a trust deed to him as Trustee,"

and contains the further provision that any balance of the moneys collected by him from the Dowling-Camp Lumber Company remaining after satisfying his demands, be paid over to the said J. W. McWilliams Company, its successors and assigns. Stevens filed his bill for the foreclosure of the Dowling-Camp Lumber Company mortgage, and therein and thereby showed the procurement of the said judgments, but alleged that the interests of the appellants, under said judgments, accrued subsequent to the lien of the Dowling-Camp Lumber Company mortgage and was inferior and subject to the lien of said mortgage, it "being a continuation of" the J. W. McWilliams mortgage.

On the day the bill of complaint was filed, the court appointed a receiver with full power to operate and maintain the sawmill plant, etc.

Testimony was taken before the chancellor, who, afterwards', made and entered a decree adjudging the equities to be with the complainant, that the lien of the Dowling-

Camp Lumber Company mortgage was prior to the rights and interests of the defendants, Julia A. Travers, Susie Linebaugh and Joseph Frazier, individually, and as Executors and Trustees under the last will and testament of Edward Marion Hendry, deceased, and that the receiver theretofore appointed "make a report and accounting to this Court of the moneys received and disbursed by him in connection with such Receivership, and it is *ordered* that the costs of such Receivership, from the time of the filing of the answer of said defendants, Julia A. Travers, Susie Linebaugh and Joseph Frazier, individually, and as Executors and Trustees under the Last Will and Testament of Edward Marion Hendry, deceased, shall be itemized in said accounting to be filed by said Receiver, and that one-half of the Court costs accruing after the filing of the answer of said defendants last named shall be paid by said defendants last named to complainant herein."

From this decree an appeal has been taken to this Court.

But two questions have been presented here for us to answer. Stated tersely they are:

1. Did the court err in decreeing the lien of complainant superior to the judgment liens of appellants, and,

2. Did the court err in decreeing that one-half of the costs that accrued after the filing of the answer of appellants be paid by appellants?

If we answer the first question in the affirmative, it will not be necessary to answer the second.

It is evident from the pleadings and proofs, that it was the intention of both the J. W. McWilliams Company and Taylor that the lien upon the land and timber involved should be released for the purposes of sale upon credit, that the vendee of the timber should get an unincumbered title thereto, and that the J. W. McWilliams Company

should receive in return therefor, notes of Dowling-Camp Lumber Company for the unpaid purchase price of the land and timber secured by a mortgage thereon, which in turn should be assigned to Taylor as collateral to secure the payment of the debt due him by the J. W. McWilliams Company. We find no evidence of an intention to reserve in the holder of the Taylor mortgage, a lien upon the land and timber released therefrom. Indeed, the language used in the release and also in the assignment from J. W. Mc-Williams Company to Taylor clearly indicates that it was the intention of both Taylor and the J. W. McWilliams Company that the notes and mortgage executed by Dowling-Camp Lumber Company be taken over and held by Taylor as collateral security in lieu of the lien of the Taylor mortgage upon the property released from such lien.

"Strictly speaking, the term 'collateral' or 'collateral security,' denotes a pledge of incorporeal personal property, such as stocks, bonds, choses in action, etc., while a 'pledge' may be defined as a deposit of corporeal personal property as security, with an express or implied power of sale upon default. This power of sale without resort to judicial proceedings is one of the features which distinguishes a pledge from a lien. Judge Story defined a pledge as 'a bailment of personal property as a security for some debt or engagement.' And Mr. Justice WILLES held that the right to the property vests in the pledgee only so far as is necessary to secure the payment of the debt. The legal title and general ownership of pledged property remains in the pledgor, while only a special property—for a special purpose—passes to the pledgee, and this special property is not enlarged by the pledgor's default in paying the debt secured at its maturity. The pledgee may detain the pledge until the debt is paid, or sell it, after default, but, subject to this power or special property right, the pledgor retains

the legal title and general property right in the goods' pledged." Pepper v. Beville, 100 Fla. 97, 129 So. 334.

There is no evidence before us that Dowling-Camp Lumber Company assumed or agreed to pay the debt of J. W. McWilliams Company to Taylor.

The law of subrogation does not enter into this case. (Boley vs. Daniel, 72 Fla. 121, 72 So. 644, L.R.A., 1917, A. 734). Neither is this a case for the application of the law of novation. There has been no substitution of a renewal obligation between the J. W. McWilliams Company, or its successors in title, and the holder of original note and mortgage given to Taylor, nor any release of the McWilliams Company, the maker, from his obligation to pay the note to Taylor, Trustee, or any part thereof, 30 Enc. Law, 22nd ed. 661 *et seq.* Here we have a case where a mortgagee waived his lien upon the land and timber in question upon the delivery of an assignment to him of notes and mortgage given by a third party to his debtor, J. W. McWilliams Company, for a much larger amount than the debt secured, as collateral security for the payment of the balance due him. It is true that the lien of the mortgage given by Dowling-Camp Lumber Company is only upon the land and timber that was released from the lien by the holder of the first mortgage, and that both mortgages were held by the complainant, though in different capacities. The original mortgage he held as owner, while he held the Dowling-Camp Lumber Company mortgage as pledgee. As pledgee of the mortgage given by Dowling-Camp Lumber Company he was vested with the title thereto only so far as was necessary to secure the payment of the debt due him, while the legal title thereto and the general ownership of same remained in the J. W. McWilliams Company. Unquestionably a new mortgage in renewal of an old one, takes precedence to the extent of the old mortgage debt over an

intervening lien upon the property covered by the mortgage. Federal Land Bank of Columbia v. Godwin, 107 Fla. 537, 136 So. 513. (145 So. 883.)

This rule, however, "does not apply where there is evidence of an intention to waive the lien of the prior mortgage, or to effect a payment thereof, neither is the rule applicable where the new mortgage is given to a different person from whom the debtor borrowed the money to pay off the old mortgage, nor where the new mortgage secures a distinct debt from the old, or an additional debt, the satisfaction in such cases operating as a complete discharge of the first mortgage." 5 Thompson on Real Property, 353; 1 Jones on Mortgages, 8th ed. 1094; 41 C. J. 582.

In the case at bar, the parties to the mortgage sought to be foreclosed are not the same as those to the mortgage given to Taylor as Trustee, the said mortgages secure different debts, and the formal release of the land and timber in question unmistakably shows the intention of Taylor to abrogate the lien of the mortgage then held by him.

It may also be remarked that at the time the release was executed, Taylor had notice of the existence of the judgment lien, and the record does not reveal that the Dowling-Camp Lumber Company or the appellants ever agreed that the lien of the first mortgage should be kept alive for the benefit of the holder of such mortgage.

It is argued by appellees that the appellants will not be harmed or in any manner injured by holding that notwithstanding the release, the lien of the first mortgage will be preserved in equity until the debt of the J. W. McWilliams Company to Taylor, as Trustee, is satisfied in full, that the liens of the judgment creditors were not acquired in reliance upon the release, and that they should not be "raised accidentally" to the dignity of a first lien holder. This argument

is not without force, but if we could and should so hold it would be contrary to the intention of the parties as shown by the proofs. This Court has recognized the doctrine that all parties are free to make what contracts they please, so long as no fraud or deception is practiced and the contracts are legal in all respects (Continental Casualty Co. v. Bows, 72 Fla. 17, 72 So. 278; Mizell Life Stock Co. v. J. J. Mc-Caskell Company, 59 Fla. 322, 51 So. 547; Atlantic Coast Line R. Co. v. Beasley, 54 Fla. 311, 45 So. 761) and that with the wisdom or folly of contracts which they may be called upon to construe, the courts have no concern (Florida Ass'n. v. Stevens, 61 Fla. 598, 55 So. 981; Mitchell v. Mason, 65 Fla. 208, 61 So. 79).

Equity does not require courts to disregard well-grounded principles of law to restore litigants to rights that they have, for a consideration, deliberately, or even negligently, waived.

Appellees have cited the case of Elizabethport Cordage Co. v. Whitlock, 37 Fla. 190, 20 So. 255, but we fail to see its applicability to this case. The facts brought out in the two cases are different. In the cited case, the court discussed the law of subrogation. Here, there is nothing to suggest the substitution of one person in the place of another with reference to a lawful claim or right.

In the Tennessee case of Bridges v. Cooper, 39 S. W. 720, the facts are almost on all-fours with the instant case, and there the Court said:

"Rinaldi, the releasing mortgagee, intended to release unconditionally and absolutely all his rights under the mortgage so that Cooper, the mortgagor, could sell the land discharged from that encumbrance and be expected thereafter to have no other rights against the land than such as Cooper, the intended vendor, would have by reason of his lien for unpaid purchase money. * * * As transferee of these notes, Rinaldi stands upon exactly the same plane as that

occupied by Cooper at the time of the transfer. It is worthy of repetition that Rinaldi made his release and quit claim to enable Cooper to sell the land, and that he did so with no thought, expectation or promise that he should ever thereafter have any claim against the land other than the expressed lien to be retained by Cooper in his own behalf. As expected and promised, this lien was in good faith assigned to Rinaldi with the notes of the vendee and he is now accorded the full benefit of it, but he is entitled to nothing as mortgagee. It would be a strange thing indeed to find or hold that a mortgage confessedly dead as to the mortgagor is alive as to its creditors."

We agree with the conclusions reached in the Tennessee case, and hold that the court erred in decreeing the lien of the mortgage in suit superior to the judgment liens of appellants.

The decree is reversed, and the cause is remanded with directions to the lower court to enter a decree in accordance with the views herein expressed.

PER CURIAM.—The record in this cause having been considered by the Court and the foregoing opinion prepared under Chapter 14553, Acts 1929, adopted by the Court as its opinion, it is considered, ordered, adjudged and decreed by the Court that the decree of the court below should be and the same is hereby reversed and the cause is remanded with directions to the lower court to enter a decree in accordance with the views herein expressed.

DAVIS, C. J., and WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.

ELLIS, J., absent on account of illness.