## FRANK BENNETT *v.* FRANK WESTFALL
[No. 89, October Term, 1945.]

*Decided March 15, 1946.*

The cause was submitted to MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

150

*Edward J. Ryan* on the brief for the appellant.

*Thomas Lohr Richards* on the brief for the appellee.

GRASON, J., delivered the opinion of the Court.

On April 15, 1943, Hunter J. Shinholt and Ethel H. Shinholt, his wife, purchased from the Second National Bank of Cumberland, a lot with improvements thereon, and on October 18, 1943, mortgaged the premises to the bank for $5,000. On June 13, 1944, they executed a mortgage on the same property, to Frank Westfall for the sum of $773.60. These instruments were recorded among the Land Records of Allegany County. On August 30, 1944, Frank Bennett entered a judgment against Shinholt and his wife in the amount of $1,000, in the Circuit Court for Allegany County. The Mortgage from Shinholt and wife to Westfall was due on October 16, 1944, and Westfall pressed for payment, which the mortgagors were unable to make. Shinholt proposed to Westfall that he would raise the mortgage to $1,000 if he gave him another year, to which Westfall agreed. A new mortgage, on the same property, due October 16, 1945, to secure the sum of $1,000, was executed by Shinholt and wife to Westfall. The first mortgage given Westfall, for $773.60, was released and this release, together with the mortgage dated October 16, 1944, was duly recorded. Shinholt did not tell Westfall that between the date of the first mortgage and the date of the second mortgage which he and his wife executed to him, Bennett and wife entered a judgment against him and his wife for $1,000. When Westfall discovered this to be so, he filed his bill against Shinholt and wife and Frank Bennett and wife, in the Circuit Court for Allegany County, in Equity, in which he prayed that the first mortgage to secure the sum of $773.60, executed by Shinholt and wife to him, be restored to its proper priority as a lien on said property, senior and prior to the judgment held by Bennett and wife. A decree *pro confesso* was entered against Shinholt and wife, but Bennett and wife answered the bill and resisted the relief sought to be obtained by the prayer thereof.

Testimony was taken in open court, solicitors heard, and the court, on June 26, 1945, decreed that the mortgage given by Shinholt and wife to Westfall, dated June 13, 1944, to secure a debt of $773.60 be restored as a mortgage lien upon the property conveyed in said mortgage as of the date of said mortgage, and that the release of the same, dated October 14, 1944, was made in mistake of fact and is null and void. It further decreed that the mortgage from Shinholt and wife to Westfall, dated October 14, 1944, to secure a debt of $1,000, be null and void. From this decree the appeal in this case was taken.

There is no dispute about the facts. Shinholt and wife executed the mortgage to Westfall, dated the 13th of June, 1944, to secure the sum of $773.60. This mortgage was released on October 14, 1944, and a new mortgage given by Shinholt and wife to Westfall, to secure the sum of $1,000. In the meantime, on August 30, 1944, Bennett and wife entered a judgment against Shinholt and wife for the sum of $1,000. Thus, when the bill in this case was filed, it appears by the public records that the first lien against the property in question was the mortgage of the Second National Bank, the second, the judgment held by Bennett and wife and the third lien the mortgage held by Westfall for $1,000.

Bennett contends there was no mistake when Westfall released his first mortgage on October 14, 1944, and on the same day took a mortgage from Shinholt and wife for $1,000. He asserts it was a matter of carelessness in not paying an attorney to make an examination of the record to determine the status of Shinholt's property when Westfall took his second mortgage. He declares that the court was without right to restore the first mortgage given to Westfall, as of the date of its execution, thus giving it priority over his judgment.

It is the contention of appellee that the matter was a mistake, that he did not intend to take a junior lien for a senior lien and would not have done so had he known that Bennett and wife, in the meantime, had secured a lien on the property for $1,000. He contends that an

equity court has power to correct this mistake and to decree the first mortgage to be a pior lien.

In *Burlington Building and Loan Association v. Cummings*, 111 Vt. 447, 453, 17 A. 2d 319, 322, decided January 17, 1941, it was held: "If a mortgagee by reason of fraud or mistake takes a new mortgage in the place of an old one, not in payment, but in continuation of old indebtedness, and cancels the old mortgage without knowledge of an intervening lien, although such lien is of record, he will not be held to have subordinated his security to the intervening lien, in absence of intervening rights of innocent third parties, if, at the time he cancelled the senior mortgage, the holder of the intervening lien had actual or constructive knowledge of the same."

That case also held: "Due diligence did not necessarily require examination of record to ascertain whether any intervening liens had been placed on property"; that: "Courts of Chancery do often interfere for the purpose of correcting agreements and contracts of almost every description, where the legal effect is entirely different from what the parties intended at the time it was made; and this too in cases where the mistake of the parties was relative to the effect merely; and so might be said to be rather a mistake as to the law than as to the fact."

In *Cliffside Park Title, etc., Co. v. Progressive Theatres*, 122 N. J. Eq. 109, at page 112, 192 A. 520, at page 522, the rule is announced: "'Where a first mortgagee accepts a new mortgage and surrenders a prior one for cancellation, in ignorance of the existence of an intervening lien, equity, in the absence of laches or other disqualifying fact, will restore him to his original position' (obviously as against the intervening lien-or) ; and it was held that the complainant, which had held a mortgage ahead of the liens of the defendant judgment creditors, and had cancelled it in exchange for a new mortgage of lesser amount, in ignorance of the existence of the intervening judgments, and therefore as the result of a mistake of fact, *i. e.,* the mistaken belief that in fact no intervening judgments existed, was, notwithstanding its ignorance of

the judgments was the result of a negligence in failing to search the records, entitled to be restored to its original position as against the judgment creditors, inasmuch as no injury or damage had been or would be caused to them, they having in nowise changed their previous position in consequence of, or reliance upon, the cancellation of the mortgage."

In *Conservative Life Ins. Co. v. National Exchange Bank,* 114 W. Va. 271, 273, 171 S. E. 530, 531, it is said: "Our court has held that the cancellation of a mortgage on the record is but *prima facie* evidence of its discharge; and that, if the owner prove the cancellation to be induced through fraud, accident, or mistake, his rights under the mortgage will not be affected thereby." And it quotes 33 *A. L. R.* 149: "Where the holder of a senior mortgage discharges it of record, and contemporaneously therewith takes a new mortgage, he will not, in the absence of paramount equities, be held to have subordinated his security to an intervening lien unless the circumstances of the transaction indicate this to have been his intention, or such intention upon his part is shown by extrinsic evidence."

To the same effect see: *Holt v. Mitchell,* 96 Colo. 412, 43 P. 2d 388; *Institute Building and Loan Association v. Edwards,* 81 N. J. Eq. 359, 86 A. 962; *International Trust Co. et al. v. Davis & Farnum Mfg. Co. et. al.,* 70 N. H. 118, 46 A. 1054; *Robinson v. Sampson,* 23 Me. 388; *Ward's Executors v. Hague,* 25 N. J. Eq. 397; 19 *R. C. L.,* Secs. 257 and 262; 36 *Am. Jur.* Sec. 510.

"If, then, he releases his present mortgage, will equity cure the mistake, and reinstate the old lien to its former priority? The answer is no, if the holder of the intervening lien was himself a *bona fide* purchaser without notice of the old mortgage. In the absence of that, however, reinstatement will be decreed. The reason is that an intervening lienor, not being a *bona fide* purchaser, can urge nothing against that course being adopted. If things remain as they are he will be unjustly enriched at the mortgagee's expense, whereas he can not be injured if the old

lien is restored. Thus the balance of equity is with the mortgagee's prayer, and his mistake will be rectified." *Glenn on Mortgages,* Vol. 3, Sec. 384, p. 1569.

The authorities cited by appellant are not in point, with the exception of the case of *Travers v. Stevens,* 108 Fla. 11, 145 So. 851, 854. In that case it is said: "Unquestionably a new mortgage in renewal of an old one takes precedence to the extent of the old mortgage debt over an intervening lien upon the property covered by the mortgage. * * * This rule, however, 'does not apply where there is evidence of an intention to waive the lien of the prior mortgage, or to effect a payment thereof, neither is the rule applicable where the new mortgage is given to a different person from whom the debtor borrowed the money to pay off the old mortgage nor where the new mortgage secures a distinct debt from the old, or an additional debt, the satisfaction in such cases operating as a complete discharge of the first mortgage. ' "

We think this quotation tends to support the position of the appellee. The new mortgage secured the identical debt as the old one, and its excess in amount of the old one was usury, and usury being unlawful, is not a debt at all; the excess cannot be collected in an action at law or in equity. *Brenner v. Plitt,* 182 Md. 348, 34 A. 2d. 853.

It is contended that appellee was negligent in that he did not have the record searched. In the case of *Holt v. Mitchell, supra,* it is said [96 Colo. 412, 43 P. 2d 389]: "It is a well-recognized proposition of law that one who relies on the negligence of another as a ground for recovery, or to prevent recovery by another, before he can prevail must show that by reason of such negligence he has been damaged or has done something he would not have done or failed to do something he otherwise would have done to his prejudice in reliance thereon."

It is clear that appellee's failure to consult the Land Records in no way affected the appellant. It certainly did him no harm. If his contention is sustained in this case it will do him a great deal of good, and this, too, because of a mistake made by appellee in not consulting the Land

Records.  His position is: You made a mistake, it did me no harm; in fact, resulted in greatly benefiting me.  Therefore, you can not have your mistake corrected.  This position has no appeal to a court of equity.  Negligence, therefore, if any there was, committed by appellee, caused no harm to the appellant and it is immaterial.

When appellee discharged the first and took the second mortgage given him by Shinholt and wife, he did not have actual knowledge of the intervening judgment.  Whatever effect the failure at that time on the part of Shinholt to disclose that Bennett and wife held a judgment for $1,000 against Shinholt and wife might have as bearing upon fraud, it cannot be said that under the facts in this case appellee intended to substitute a junior lien for a senior lien and thus place the intervening judgment ahead of his mortgage.  The evidence does not warrant the conclusion that appellee intended anything of the kind.

The evidence here shows that at the time of the execution of the second mortgage to appellee by Shinholt and his wife there was due under the first mortgage $773.60; that at the time of the execution of the second mortgage by those parties to appellee no money at all passed.  It is true that the difference in the amounts of the two mortgages, to wit, $226.40, was intended as a bonus to be paid by the mortgagors to the appellee and was usurious, but under the court's decree this has been taken from him and the parties to the mortgage transactions have been restored to the position they occupied before the second mortgage was executed.  Thus no one has been damaged or benefited.

It was suggested in the argument that appellee does not come into equity with clean hands.

"The maximum that he who comes into equity must come with clean hands has nothing to do with retribution or punishment, or with disapproval of the character or past behavior of the applicant, but only with the effect of his present application." *Sherwood Co. v. Distilling Co.*, 177 Md. 455, 465, 9 A. 2d 842, 846.  See also *Baltimore Humane Impartial Society, etc. v. Marley*, 156 Md.

478, 144 A. 521; *Sheeler v. Holt,* 161 Md. 366, 157 A. 195.

Inasmuch as the lower court's decree restored the Land Records of Allegany County with respect to the matters involved in this case to the condition in which they were prior to October 14, 1944, we can see no reason why we should punish the appellee by refusing him relief in this case. The effect of such action would, of course, punish appellee and benefit Bennett and wife when they have done nothing in law or in morals to deserve or warrant the enrichment to be gained by them, should we refuse appellee relief and reverse the lower court. This we decline to do.

*Decree affirmed, with costs to appellee.*