JAMES A. C. BOND, Administrator of HENRY BUS-
SARD vs. FANNIE V. E. DORSEY, and others.

*Release of Mortgage—Mistake—Relief in Equity.*

The holder of two mortgages was paid the amount due on one of
them, which he promised to release upon the record, but in fact
released the other, which had not been paid.  Upon a bill filed by
his administrator after his death for a foreclosure of the released
mortgage, and claiming that the release was made by mistake, it
was HELD:

1st. That upon satisfactory proof that a mistake of this nature has
occurred, equity will intervene and grant relief.

2nd. That the evidence being such as to leave no reasonable doubt
on the mind of any one who carefully examined it, that the de-
ceased did not intend to release the mortgage which had never
been paid, and that the release was the result of a mistake, the
plaintiff was entitled to the relief asked for.

APPEAL from the Circuit Court for Carroll County, in
Equity.

The bill in this case was filed by Milton B. S. Bussard,
as administrator of Henry Bussard, deceased, for the fore-
closure of a mortgage made by William H. B. Dorsey and
Fannie V. E. Dorsey his wife, and assigned to said Bus-
sard, by whom it had been released.  It was claimed in
the bill that the mortgage had been released by mistake,
and that the complainant was entitled to a foreclosure
notwithstanding the release.  The mortgaged premises
belonged to Fannie V. E. Dorsey, and her husband being
dead, the bill was filed against her and two subsequent
mortgagees under mortgages made prior to the date of
the release, and against James A. C. Bond, as administra-
tor of the said William H. B. Dorsey, deceased.  Subse-
quently the letters of administration on the estate of

Henry Bussard, deceased, which had been previously granted to the complainant, were revoked, and letters upon the estate of said deceased were granted to James A. C. Bond, who filed his petition asking to be made party complainant in place of the said Milton B. S. Bussard. The Court passed an order making the said Bond, as administrator of the said Henry Bussard, deceased, party complainant to prosecute the suit. The Court, (JONES, J.,) dismissed the bill, and the complainant appealed. The case is further stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*James A. C. Bond,* for the appellant.

*James McSherry,* and *Charles B. Roberts, Attorney-General,* for the appellees.

YELLOTT, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Carroll County, sitting in Equity. The bill of complaint was filed by the administrator of Henry Bussard; and it is alleged in said bill and shown by the proof in the cause, that William H. B. Dorsey, being indebted to the Central National Bank of Frederick City on two promissory notes, with the said Henry Bussard as one of his endorsers, did, on the 2nd day of October, 1876, execute a mortgage to said bank as security for the liquidation of said indebtedness. The land described in said mortgage consists of a tract of about forty acres; of which said tract eight acres and a fraction are situate in Frederick County, and the remaining portion in Carroll County. This land belonged to the appellee, Fannie V. E. Dorsey, who was the wife of the said William H. B. Dorsey, and who joined with her

MARYLAND REPORTS.

husband in the execution of the mortgage. Subsequently, but on the same day, the said Dorsey and wife executed another mortgage of the same property to Lewis F. Detrick, of Baltimore City, in which is a recital mentioning the existence of the first mortgage and thus recognizing its priority. On the 9th day of November, 1876, Dorsey and wife executed a mortgage of the same property to The Maryland Fertilizing and Manufacturing Company.

On the 14th day of May, 1878, the first mentioned mortgage was assigned, by the Central National Bank, to the said Henry Bussard, he having paid the notes for which this mortgage was intended as security. The said Henry Bussard held another mortgage executed by John J. Molesworth, of Frederick County, and recorded in the clerk's office of said county. As shown by the testimony of Molesworth, the money secured by this mortgage was paid, on or about the 17th of May, 1878, to the mortgagee at his house in Carroll County, at which time he promised to enter a release on the record in Frederick County. On the 21st of May Henry Bussard went to Frederick City ; and it is contended by the plaintiff's solicitor that he went for the purpose of releasing the mortgage executed by Molesworth. The mortgage assigned to him by the bank, having been recorded in Frederick County, on the 27th of May, 1878, soon after his return from Frederick, he sent the same mortgage, with the assignment thereon, to the Clerk of the Circuit Court for Carroll County to be there recorded. It was subsequently discovered that, while on his visit to Frederick City, he had not released the mortgage from Molesworth, but had released the mortgage executed by Dorsey and wife to the bank and assigned to him, which mortgage had not then been, and has never since, been paid. It is contended by the appellant that this release was made by mistake ; and this question must now be determined by the proof in the cause.

The evidence adduced on the part of the plaintiff seems to be strong enough to remove all reasonable doubt with reference to the occurrence of a mistake in making the entry of a release on the record. It is not to be presumed that Mr. Bussard intended to release a mortgage which had never been paid. And it is difficult to suppose that, after executing a release in Frederick County, he would subsequently send the same mortgage to Carroll County to be there recorded. But it is easy to believe that he intended to release the mortgage from Molesworth, which had been paid and which was afterwards released by his administrator. Such surmises would, of course, avail nothing unless supported by proof. But the testimony of witnesses, who are not contradicted, is so strong as to show clearly that Mr. Bussard did not intend to release the mortgage assigned to him by the bank. One of the witnesses says, that in March, 1880, the appellee, Fannie V. E. Dorsey, said to Henry Bussard in her presence, that it was a mistake, and offered to take him to Frederick in her carriage and have the mistake rectified. Another witness says, that she heard Mr. Bussard tell Mr. Ross, his attorney, that he had intended to release the mortgage from Molesworth and had executed the release of the other mortgage by mistake. These two witnesses are the daughters of Henry Bussard, and may be interested in his estate; but they are of high respectability, and their testimony, so far from being contradicted, is corroborated by that of other persons who have no interest in the matters in controversy. The mother of William H. B. Dorsey says, that she heard the appellee, Fannie, offer to take Mr. Bussard in her carriage to Frederick, and he said he was too infirm to go, and expressed his apprehension that he would never be able to correct the release. Mr. Bussard died very soon afterwards at the age of eighty-two years. This testimony is strongly corroborated by that of Charles W. Ross, who says, that " Mr. Bussard claimed that the

release made by him of the Central Bank mortgage, which had been assigned to him, was an error; that he intended to release a mortgage given him by a man of the name of Molesworth." Mrs. Dorsey, the appellee, was present at this conversation.

The only testimony offered by the defendant was that of Thomas Gorsuch, formerly the Clerk of the Circuit Court for Frederick County. He says he has no recollection of the transaction, but does not think that such a mistake could have occurred, as it was an assigned mortgage. But when we see by the evidence, that the mortgage was assigned by the bank on the 14th of May, 1878, and was first recorded in Frederick County; that on the 21st of May, 1878, Mr. Bussard went to Frederick, and on the 27th of the same month sent the mortgage to Carroll County to be recorded, the conclusion is obvious that he must have spoken to the clerk about the mortgage, and, during this conversation, the mistake may, as the result of age and infirmity, have occurred. But Mr. Gorsuch's memory has retained nothing in relation to the transaction, and therefore nothing is established by his testimony.

When it has been proven that a mistake of this nature has occurred, equity will intervene and grant relief. But it has been said in some of the cases, that the proof must be " clear and overwhelming." *Beard vs. Hubble,* 9 *Gill,* 430; *Groff vs. Rohrer,* 35 *Md.,* 327; *Mendenhall vs. Steckel and Wife,* 47 *Md.,* 454.

What is intended to be understood by the very strong expression *overwhelming proof* is explained by other authorities. It cannot be disputed that proof sufficient to remove every doubt from the mind is in effect, overwhelming, because it establishes the fact sought to be proved, and no proof can usefully accomplish more than this result. In some of the States the expressions used by the Courts are not so strong, and it is held that " the evidence of the mistake must be clear and satisfactory, leaving but

little, if any, doubt of the mistake." *Miner vs. Hess*, 47 *Ill.*, 170; *Heavenridge vs. Mondy*, 49 *Indiana*, 434; *Burgin vs. Geberson*, 26 *N. J. Eq.*, 72.

And in other Courts "satisfactory evidence" of the mistake is sufficient, as, indeed, it must be sufficient in all cases where a material fact is sought to be established by proof, for, if it were otherwise, the evidence would not be satisfactory. As Chief Justice SHAW said in a case nearly resembling the one now under consideration:

"The discharge of a mortgage on the margin of the record of the mortgage deed is strictly an act *in pais* of which the register is the witness, and is declared by the statute to have the force and effect of a release duly acknowledged and recorded. But a release acknowledged and recorded would not be conclusive, even if delivered, if no money was paid, and other facts proved, showing that it was delivered by accident or mistake. I am of opinion it is such a case of accident and mistake in the course of conveyancing, as would be relieved against in a Court of equity upon satisfactory proof of such mistake or accident." *Bruce vs. Bonney*, 12 *Gray*, 111.

It has been contended on the part of the appellee that, "as against the subsequent mortgages, parol evidence of an alleged mistake is inadmissible, and that no decree could be passed thereon affecting their rights." The cases cited as authorities do not support this proposition. Those were cases in which the legal existence of the mortgages was not disputed, but an attempt was made to vary the apparent meaning of the instruments of writing, and give them a very different effect from that warranted by the language therein contained. But here the very existence of a valid release is disputed. It is contended that the release, having been made by mistake, is a nullity. In relation to this question the authorities tend strongly in one direction. The doctrine thus established is, that "a subsequent mortgagee, whose rights existed at the time

of the release, cannot object to the prior mortgagee being restored to his rights. Of course the mortgage cannot be restored as against one who has in good faith purchased the property after the cancellation, or has advanced money upon it upon the faith of a clear record title." 2 *Jones on Mortgages, sec.* 967; *Trenton Banking Co. vs. Woodruff, et al.,* 2 *N. J. Eq.,* 117; *Fassett vs. Smith,* 23 *N. Y.,* 252.

The authorities remove all doubt in regard to the admissibility of parol evidence to prove a mistake in regard to the execution of an instrument of writing. *Busby vs. Littlefield,* 31 *N. H.,* 193; *Canedy vs. Marcy,* 13 *Gray,* 373; *McKay vs. Simpson,* 6 *Iredell (Equity),* 452.

The evidence in this record is such as to leave no reasonable doubt on the mind of any one, who carefully examines it, that Henry Bussard did not intend to release the mortgage which had never been paid, and that the release was the result of a mistake. Such fact being established, it follows that the plaintiff was entitled to the relief asked for in the bill of complaint, and the Court below erred in refusing to grant such relief. The order dismissing the bill should, therefore, be reversed, and the cause remanded, so that a decree may be passed in conformity with what has been said in this opinion.

*Order reversed, and cause remanded, with costs to the appellant.*

(Decided 27th May, 1886.)