## CIRCUIT COURT NO. 2 OF BALTIMORE CITY

Filed March 23, 1891.

SAMUEL G. LEIGHT AND FRANK H. ZOUCK

VS.

THE ROYAL INSURANCE COMPANY OF LIVERPOOL, ET. AL.

*E. N. Rich* for plaintiff.

*Schmucker & Whitelock* for defendant.

PHELPS, J.—

This is a suit for the reformation of a fire insurance policy and, a loss having occurred, for payment. There is no doubt as to the principle applicable in cases of this nature. The mistake must be mutual; must be clearly proved, and there must be no uncertainty as to the proper correction of the mistake. The very strong expression "over-whelming proof" is explained to mean that the proof must be "clear and satisfactory, leaving but little, if any, doubt of the mistake."

Bond vs. Dorsey, 65 Md. 314, 315.

Such being the settled law, the case turns upon a question of fact, involving a patient analysis of some rather stupid testimony.

To understand the bearing of this testimony and reconcile its apparent contradictions, the situation itself and the conceded facts afford the key.

There is no doubt whatever, or ought to be none, as to these fundamental facts:

1. That Leight was the owner of the property to be insured.

2. That Crout, the agent, came to insure the property on that basis.

3. That Silverman and Parker kept a store upon the premises under a short lease, and that a sign over the door had on it the name C. Silverman, that being the name, not of the Silverman who was Parker's partner, but of his wife.

4. That the only man connected with the premises who was at all distrusted by the agent was Silverman.

5. That therefore Leight had no conceivable motive for giving Silverman's name as part-owner, or for overstating Silverman's real interest in the premises.

6. That the defendant's agent, Crout, who acted for the company in the transaction was below the ordinary standard of capacity for that sort of business.

7. That, waiving for the present the question of how the mistake occurred, it is perfectly clear that the connection of the name of Silverman with Leight's name in the policy was a mistake, and equally clear that proper correction is simply to erase that name and change the plural pronoun to the singular.

Keeping these facts in mind, which are either conceded or are so patent that they ought to be conceded, there is no difficulty in believing Leight when he testified that he told Crout, in answer to his inquiry, what was the real nature of Silverman's interest in the property, substantially as above stated.

Crout appears as if he wanted to contradict this, but his testimony is so confused, and his memory of the transaction so imperfect, that there should be no hesitancy in rejecting it as altogether unreliable.

The evidence upon the whole is entirely clear and satisfactory, that the erroneous insertion of Silverman's name was simply an inexcusable blunder of the defendant's agent, and not the consequence of a misrepresentation by Leight, which misrepresentation Leight had no conceivable motive to make, for the reason before stated.

In addition to the direct evidence of Leight, and the feeble contradication of Crout, we have a strong and controlling presumption from the situation itself. Cases are not wanting where presumptions of this nature are alone sufficient, without the aid of direct evidence.

Kerr on Fraud and Mistake (Am. Ed.), 424, 425.

Here the "reasonable presumption from the nature of the transaction" is that it was intended by both parties that the plaintiff should have a valid policy upon his property, and that the failure to properly state his ownership, thereby invalidating the policy, was the blunder of the defendant's agent. In several features this case resembles a leading Maryland case; as to mutuality; as to supplementing direct proof by presumption from the "subject and surroundings"; and as to reforming a mistake over the denial of a defendant, and enforcing the contract as reformed.

Popplein vs. Foley, 61 Md. 386, 388.

But the main reliance of the defendant's counsel in his able argument was the delay of the plaintiff in not having the mistake corrected before the fire, although he was aware of the mistake, and had ample opportunity. He points to the fact as almost conclusive that no such element is to be found in any of the cases in which relief of this nature has been granted.

Laches depends upon the special circumstances of each case. The prominent circumstances here is the mistake itself, its character and its effect. Plainly the mistake in no wise prejudiced the company. The company saw no inducement to insure in Silverman, on the contrary, the name of Silverman seems to have been a sort of bug bear to the defendant's agent. Crout's distrust of the man Silverman, and his idea of the importance of bringing that suspicious name to the atten-

tion of the company, may have in fact, had something to do with the blunder. However that may be, there is no proof, and not the slightest reason to presume that the calling of the attention of the company to the mistake would have had any other result than the prompt erasure of the erroneously inserted name from the policy.

This is not a case of *lying by* to await an important death, or some event which materially alters the situation. So far as the mistake is concerned, the occurrence of the fire did not alter the situation at all, except in furnishing the defendant a strong but inequitable inducement to resist its rectification. The delay of two or three months cannot be relied on as acquiescence, unless it be shown that the plaintiff had knowledge of his rights. In this case there is no proof that the plaintiff knew the legal effect of the mistake in avoiding the policy. The principle *"ignorantia legis neminem excusat"* has, like other maxims, its limitations, and one of them is in cases of acquiescence.

It is impossible to find any sinister motive for this short delay, or to point out wherein it substantially prejudiced the company. The plaintiff was a country huckster, and although he noticed the mistake, he was evidently not impressed with its importance.

So far as the absence of direct precedent is an argument, it is met by the absence of any case having parallel circumstances. It is enough if there is not found in the particular circumstances of this case such laches as can be equitably relied on as a defense.

Several minor in-accuracies have been pointed out in the plaintiff's testimony, which would have had a damaging effect if there were any ground to question his good faith. As before stated, this is one of those cases where the situation speaks for itself, and raises presumptions capable of supplementing imperfections of proof.

The question being mainly of fact, it was not deemed necessary at first to write an opinion, but the foregoing views will be filed at the request of plaintiff's counsel, a decree having already passed in accordance there with.