THE CONSERVATIVE LIFE INSURANCE COMPANY, *a corporation*
*v.* NATIONAL EXCHANGE BANK OF WHEELING,
*a corporation, et al.*

(CC 489)

Submitted October 18, 1933.   Decided October 31, 1933.

*J. J. P. O'Brien, Warren F. Morris* and *P. D. Morris,* for plaintiff.

*J. M. Ritz,* for defendants.

WOODS, JUDGE:

This certificate involves the sufficiency of a second amended bill, a demurrer thereto having been overruled by the circuit court of Ohio County.

Chaplane Hotel Realty Company, after having leased portions of its property to others for a term of ten years, on November 23, 1925, borrowed $75,000.00 from the Conservative Life Insurance Company, giving as evidence thereof its ten several promissory notes, each in the sum of $10,000.00, and payable in one to ten years, and its note for $500.00, payable in eleven years after date, and executing a deed of trust to secure payment of said notes. On November 14, 1927, the hotel company, having theretofore secured another loan of $24,000.00 on its note, with James M. Ritz as surety, from

the National Exchange Bank of Wheeling, executed a paper purporting to assign to said bank the rents accruing from the several leases aforesaid for a period of sixty months. On May 2, 1927, the hotel company executed a deed of trust to A. M. Seabright, trustee, to secure payment of several notes, aggregating approximately $13,000.00. The hotel company having defaulted in the payment of certain notes under the first deed of trust, the plaintiff was requested to accept new notes and deed of trust for the balance, extending the time of payment. Negotiations followed, resulting on May 3, 1929, in the release of the first deed of trust and the acceptance of fifteen new notes, each in the sum of $4,000.00, and a new trust deed. The hotel company having defaulted in its payments under the last deed of trust, the trustee, was, on January 1, 1932, directed to advertise and sell the property to satisfy the debt of the *cestui que trust*. On the 16th day of January, 1932, the National Exchange Bank of Wheeling, through its attorney, J. M. Ritz, had the assignment of rents recorded. On February 4, 1932, notice having been published for four consecutive weeks, as provided by the deed of trust, the property was sold to the *cestui que trust*, the plaintiff here. The lessees of the hotel property continued, after the sale of the property, to make payment of rents to the National Exchange Bank, in accordance with the assignment of November 4, 1927.

The second amended bill, in addition to the foregoing facts, alleges, among other things, that plaintiff would not have executed the release and accepted a new deed of trust had it known of the outstanding assignment of the rents; that its action was based on the understanding that the second deed of trust would accord it the same security given by the original deed of trust; that before the execution of said release and the acceptance of the second deed of trust, it required the hotel company to secure a release of the latter's trust deed to Seabright, trustee; and that the hotel company through its legally constituted agents assured plaintiff that there were no other liens of any kind outstanding. And the bill prayed, among other things, that plaintiff's release of the original deed of trust be set aside and that its new deed of

trust be adjudged to be a continuation of said original deed of trust, and a prior lien to the assignment of rents.

Our Court has held that the cancellation of a mortgage on the record is but *prima facie* evidence of its discharge; and that if the owner prove the cancellation to be induced through fraud, accident or mistake, his rights under the mortgage will not be affected thereby. *Taylor* v. *Godfrey*, 62 W. Va. 677, 59 S. E. 631; *Fidelity Ins., etc., Co.* v. *Shenandoah, etc., Co.*, 32 W. Va. 244, 9 S. E. 180. In dealing with the question of priority of liens where a senior lien is released or discharged of record, and another instrument creating a lien upon the same property is taken in lieu thereof, which latter lien, in point of time, is subsequent to an intervening lien, the author of a note in 33 A. L. R. 149, states the following as the general rule: "Where the holder of a senior mortgage discharges it of record, and contemporaneously therewith takes a new mortgage, he will not, in the absence of paramount equities, be held to have subordinated his security to an intervening lien unless the circumstances of the transaction indicate this to have been his intention, or such intention upon his part as shown by extrinsic evidence." In a number of jurisdictions the courts have held that a mortgagee is entitled to a restoration of his priority, where he has discharged a prior lien and taken a new one in ignorance of an intervening lien on the property, provided the rights of innocent parties have not intervened. *Wooster* v. *Cavender*, 54 Ark. 153, 15 S. W. 192; *Stoeckle* v. *Rosenheim*, 10 Del. Ch. 195, 87 A. 1006; *Bruse* v. *Nelson*, 35 Iowa 157; *Young* v. *Shaner*, 73 Iowa 555, 35 N. W. 629; *Geib* v. *Reynolds*, 35 Minn. 331, 28 N. W. 923; *Emmert* v. *Thompson*, 49 Minn. 386, 52 N. W. 31; *Sledge* v. *Obenchain*, 58 Miss. 670; *Seeley* v. *Bacon*, (N. J. Ch.) 34 Atl. 139; *Institute Bldg. & Loan Asso.* v. *Edwards*, 81 N. J. Eq. 359, 86 A. 962; *Pearce* v. *Buell*, 22 Ore. 29, 29 P. 78. And in the following cases, where the mortgagee had been induced to discharge a senior lien and take a new or renewal mortgage, by reason of false representations, the courts have reached a like conclusion. *Sidener* v. *Pavey*, 77 Ind. 241; *Farmers' & D. Ins. Co.* v. *German Ins. Co.*, 79 Ky. 598; *Robinson* v. *Sampson*, 23 Me. 388; *McKeen* v. *Haseltine*, 46 Minn. 426, 49 N. W. 195;

*Young* v. *Hill,* 31 N. J. Eq. 429; *Bormann* v. *Hatfield,* 96 Wash. 270, 164 P. 921.

While, at first blush, our case of *Atkinson* v. *Plum,* 50 W. Va. 104, 40 S. E. 587, 589, might seem to be contra to the foregoing principles, it must be noted that in that case the building and loan association, *cestui que trust,* with knowledge of a contested claim of a third party to an intervening lien on the premises, approved a formal application for a new loan on the property, took a new deed of trust, and gave a formal release of the first deed of trust, and surrendered the bond given for it. The right of the intervening lienor was later established (*Atkinson* v. *Plum,* 45 W. Va. 626, 32 S. E. 229), and this Court, in view of the several formalities as well as the association's knowledge of the claim, held Atkinson's claim to have priority. That case was disposed of on the merits. However, Judge Brannon, speaking for the Court, said: ''Intention is the pole star in the matter.''

It is apparent that by reason of the recordation of the first deed of trust on the 25th day of November, 1925, the National Exchange Bank of Wheeling, at the time of making its loan to the hotel company, taking James M. Ritz as security thereon, and at the time of taking the assignment, had constructive notice. if not actual notice as alleged by plaintiff, of plaintiff's rights under said deed of trust, and could not have claimed any rights under the assignment which would in any way interfere with the security pledged in the deed of trust should it become necessary to make sale thereunder. While the hotel company could dispose of rents as it saw fit so long as it kept up the payments secured by deed of trust, it could not tie up the rents in such a manner as to interfere with the security under deed of trust in case of a default. Therefore, regardless of any fraud, if the plaintiff accepted the second deed of trust and released the first in ignorance of the alleged assignment of the rents, and the rights of innocent third parties have not been affected thereby, it is entitled, under the circumstances to have its senior lien restored. The bank cannot complain, since its position has not changed.

The allegations of the bill are sufficient to show that plaintiff never intended to release its original security, and that its equity is paramount to that of the National Exchange Bank

of Wheeling and J. M. Ritz, whatever their rights under the purported assignment may be.

The ruling of the trial court on the demurrer is therefore affirmed.

*Affirmed.*