## NORMA L. VAN SCHAIK *v.* MARIE VAN SCHAIK

[No. 568, September Term, 1976.]

*Decided February 8, 1977.*

20

The cause was argued before GILBERT, C. J., and DAVIDSON and LOWE, JJ.

*Philip E. Nuttle, Jr.* for appellant.

*Starke M. Evans* for appellee.

GILBERT, C. J., delivered the opinion of the Court.

Never loan a friend or relative more money than you can afford to lose because there is a possibility that while you keep the relative, the money and friend may be lost.[1]

In the case now before us, the appellee, Marie Van Schaik, and her now deceased husband sold to their son, Robert, and his wife, Norma, a farm located in Caroline County. Robert and Norma executed a purchase money mortgage to the appellee and her husband in the amount of $16,500. The mortgage, dated February 1, 1963, was "to be paid in five (5) years with interest at the rate of five (5) per centum per annum, payable monthly." The mortgage has not been paid; Norma, the appellant, is no longer the appellee's daughter-in-law; the appellee was compelled to go into a court of equity to establish her claim to the mortgage.

The record reveals that subsequent to the recordation of the mortgage, the appellee and her husband assigned the

---

1. Attributed to Jim Oigan, a mythical character in a child's fantasy.

mortgage to Provident State Bank of Preston, Maryland, as collateral security for a loan of $12,000. On October 25, 1968, upon satisfaction of that debt, a release of the mortgage was forwarded by the bank to the circuit court. The uncontradicted testimony indicates that the bank, which authored the release, intended to "release the assignment" or more properly stated, reassign the mortgage to the senior Van Schaik but instead released the mortgage by mistake.[2]

In 1969, appellant and her then husband deeded part of the land covered by the mistakenly released mortgage to Gustav Wilks in which they warranted specially the land conveyed. Appellee, who lived next door to the property that was the subject of the mortgage, knew of the transfer of land by appellant and her husband. The appellant's husband, Robert, learned of the mistake regarding the release in 1969, when title was being searched for the Wilks' land sale, but did not then advise his mother, the appellee, of the release.

The appellee and Robert "recapitulated" the amount due the appellee, including the accrued interest, and in July 1971, appellant and her husband executed a demand promissory note in appellee's favor for that amount, $18,918, with interest at eight (8) per centum per annum. Four months later, November 1971, appellant and her husband gave a "first mortgage" on the property to the Denton National Bank to secure a loan of $10,000. That loan was paid in 1974 and that mortgage was released.

The domestic situation between Robert and the appellant apparently degenerated to the point that appellant left the marital domicile in January 1975, and a divorce ensued. It was not until "early 1975, when Norma left" that Robert informed the appellee that the purchase money mortgage had been mistakenly released by the bank in 1968, even though, as we have stated, Robert knew of the release in 1969. Robert explained his failure to tell his mother of the release by stating, in effect, that it made no difference because, "I couldn't understand how one party could possibly

---

**2.** The senior Mr. Van Schaik died in February 1967. The record does not disclose how the mortgage was treated in his federal estate tax return, if indeed, such a return was necessary.

release other parties of that responsibility [the payment of the mortgage]."

To enforce her rights, the appellee filed a bill of complaint in the Circuit Court for Caroline County naming her son, Robert, the appellant, and the Provident State Bank as defendants. In her bill, the appellee prayed, *inter alia*, the passage of "a decree vacating the discharge and release" of the mortgage and that it be "reinstated as a lien of record" as a "mortgage from Robert Van Schaik and Norma L. Van Schaik to Marie Van Schaik and Cornelius Van Schaik."

The chancellor, at the conclusion of the testimony, ordered:

> "1. That the purchase money mortgage from Robert Van Schaik and Norma L. Van Schaik, his wife, to Cornelius Van Schaik and Marie Van Schaik, his wife, as tenants by entireties, dated February 1, 1963, . . . and the lien of record therefor is hereby reinstated and restored, and the purported release of same by the Provident State Bank dated and recorded October 25, 1968 . . . is hereby set aside and vacated.
>
> 2. That the real property on which said mortgage lien is reinstated and restored shall exclude all that parcel of 60 acres (more or less) of land conveyed by deed of Robert Van Schaik and Norma L. Van Schaik, his wife, to Gustave A. Wilkes [sic], et al. dated March 31, 1969. . . .
>
> 3. That the amount owed on this mortgage indebtedness will be the subject of further proceedings in this or a subsequent partition proceeding."

Norma L. Van Schaik instituted further proceedings to determine the amount due under the mortgage. On May 28, 1976, the court ordered:

> "1. That the amount of money due under the mortgage dated February 1, 1963 by and between Robert Van Schaik and Norma L. Van Schaik, his

wife, to Cornelius Van Schaik and Marie Van Schaik, his wife, as of and through June 30, 1976 is TWENTY TWO THOUSAND SIX HUNDRED FORTY SEVEN AND 08/100 ($22,647.08) DOLLARS.

2. That the rate of interest on subject mortgage is eight (8%) per cent simple interest on the principal balance of FOURTEEN THOUSAND NINE HUNDRED EIGHTEEN ($14,918.00) DOLLARS."

In high dudgeon, Norma Van Schaik has appealed to this Court where she asserts:

"I. Appellee's claim was barred by laches. . . .

II. The trial court erred in reforming the mortgage when no legally sufficient evidence was produced by appellee justifying reformation."

## LACHES

In support of her first contention, appellant argues that appellee knew, or should have known, as early as 1969 of the mistaken release of the mortgage when part of the property subject to the mortgage was conveyed to Gustav Wilks. Appellant urges that appellee should have been placed on notice that something was amiss by her proximity to the land sold as well as her actual knowledge of the sale, and her attorney's actual knowledge that it had been released. Appellant also charges that appellee had notice of the release in October 1968, by virtue of Md. Real Prop. Code Ann. § 3-102.[3]

The Court of Appeals in *Bradley v. Cornwall*, 203 Md. 28, 39-40, 98 A. 2d 280, 285-86 (1953), quoted with approval 2 J.

---

**3.** This section provides that "[a]ny instrument affecting property . . . may be recorded. The recording of any instrument constitutes constructive notice from the date of recording." Appellant avers that the "recording of the release in 1968 operate[d] as constructive notice of the fact to Appellee."

Pomeroy, *A Treatise on Equity Jurisprudence* § 419 d (5th ed. 1941), where it is said:

> "Laches in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of either party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel . . . against the assertion of the right."

See also *Boyd v. Mercantile-Safe Deposit and Trust Co.*, 28 Md. App. 18, 26, 344 A. 2d 148, 154 (1975).

Before the defense of laches may be successfully invoked, two elements must be shown: (1) an undue lapse of time; and, (2) some disadvantage or prejudice to the party asserting the defense. Put another way, the delay in bringing the action must be intertwined with either prejudice or circumstances which make it inequitable to grant the relief sought. *Anne Arundel County Bar Association v. Collins*, 272 Md. 578, 325 A. 2d 724 (1974); *Salisbury Beauty Schools v. State Board of Cosmetologists*, 268 Md. 32, 300 A. 2d 367 (1973); *Boyd v. Mercantile-Safe Deposit and Trust Co., supra.*

Even if we assume *arguendo* that the appellee knew or should have known of the 1968 release of the mortgage by Provident Bank, we still are required to evaluate appellant's position to determine whether during the delay appellant altered or changed her circumstances so "that . . . [she] cannot be restored to . . . [her] former state, if the right be then enforced." 2 J. Pomeroy, *A Treatise on Equity Jurisprudence* § 419 d (5th ed. 1941).

The appellant, in order to set up the defense of laches, claimed that the deaths of three witnesses [4] — (1) one of the

---

4. At the time of trial appellant's counsel called, in open court, the names of two of the witnesses. The trial judge said of the first, ". . . [He] is

mortgagees (Cornelius Van Schaik), (2) the signer of the release (the cashier of the Provident State Bank), and (3) the lawyer who recorded the release — had occurred during the delay in bringing suit and that those deaths prejudiced appellant's defense. To bolster her position relative thereto, she relies upon *Akin v. Evans*, 221 Md. 125, 156 A. 2d 219 (1959); *Krapf v. Adams*, 200 Md. 393, 89 A. 2d 623 (1952); and *Mays v. Mays*, 176 Md. 159, 4 A. 2d 121 (1939). Our review of those cases, however, leads us to conclude that they are all factually inapposite and afford appellant no sustenation. The doctrine of laches was applied in *Akin* because no witnesses were alive who could clear up the real estate transaction in question. In *Krapf* laches was held to apply where the brothers *Krapf* sought to justify a delay of sixteen years chiefly on the ground that they expected certain property would be devised to them even though it was conceded that there was no evidence of a promise to do so on the part of the deceased. Laches was present in *Mays*. There a delay prevented the defendants from defending the suit. Although all three cited cases involved the death of principal witnesses, it was not death and time lapse alone which caused prejudice to the parties, but rather that the deaths prevented material evidence from being presented. That is not the situation in the case *sub judice*. In the instant case, the appellant did not testify nor did she proffer what testimony could have been produced, different from that in the record, had the witnesses been alive and available.

The record reveals that the bank admitted its mistake, and that Robert Van Schaik acknowledged his awareness of the mistake. Appellant, as we have said, did not testify. In light of the undisputed facts, we fail to see what prejudice was caused by the unavailability of the deceased witnesses.

There is yet another consideration to be made in this case and that is the effect of the recording of the release on the parties to the mortgage. While the "[f]ailure to record the limiting instrument deprives the deed of its legal effect in

deceased. I was one of his pallbearers . . ." and of the second, "I attended his funeral, I was one of the honorary pallbearers." The judge then went on to state, "And for the record both of these witnesses are in Heaven." We observe that ordinarily that judgment is left to much higher authority.

affording constructive notice of its contents to subsequent *bona fide* purchasers," [5] it is valid as between the parties. *Harrison v. Morton*, 87 Md. 671, 40 A. 897 (1898); *Owens v. Miller*, 29 Md. 144 (1868). The same rule applies when that which should not have been recorded is recorded. Thus, if a release of mortgage is mistakenly recorded, that release is effective as to subsequent *bona fide* purchasers, but the mortgage remains valid as between the parties and equity will enforce it.

The release of the mortgage in the instant case had nothing to do with the appellant's obligation. No lapse of time within the Statute of Limitations [6] would lessen that indebtedness. It would continue until the amount owed had been paid or until the debt was otherwise cancelled by the appellee. We think the chancellor was correct in holding that the defense of laches was inapplicable to the instant case.

## RESTORATION OF THE MORTGAGE.

The litigants approach the second argument raised on appeal from entirely different perspectives. Appellant avers that the trial court ". . . not only rescinded the release but excluded the land conveyed to Wilks from the effect of the mortgage and increased the interest rate of the mortgage from five to eight percent." Appellant believes that the action by the court constituted a reformation of the mortgage as opposed to a rescission of the release. Appellant asserts that a reformation of a mortgage can take place only: "(1) Where there is a mutual mistake . . . and an agreement actually entered into, but the instrument, in its written form, does not express what is intended by the parties thereto; and (2) where there has been a mistake by one party accompanied by fraud or other inequitable conduct of the remaining parties."

---

**5.** Stebbins-Anderson Co. v. Bolton, 208 Md. 183, 190, 117 A. 2d 908, 911 (1955). *See also* Winakur v. Sapourn, 156 Md. 662, 672, 145 A. 342, 346 (1929).

**6.** Md. Cts. & Jud. Proc. Code Ann. § 5-103 states that any action to recover '. . . possession of a corporeal freehold or leasehold estate in land . . ." must be brought "[w]ithin 20 years from the date the cause of action accrues. . . ."

The appellee, on the otherhand, sees the court's exclusion of the land conveyed to Wilks as "a recognition by the Court that, as Mr. and Mrs. Wilks were not parties to this action, the Court had no power or jurisdiction to pass any order effecting [sic] their rights with regard to this . . . property."

We think the chancellor did not reform the mortgage and his exclusion of the Wilks property from the lien of the mortgage was no more than an acknowledgment that the Wilkses were *bona fide* purchasers who took title free and clear of the mortgage encumbrance.

The chancellor bottomed his holding that the mortgage should be reinstated upon two decisions of the Court of Appeals, *Bennett v. Westfall,* 186 Md. 148, 46 A. 2d 358 (1946), and *Bond v. Dorsey,* 65 Md. 310, 4 A. 279 (1886).

*Bennett* involved a release of a mortgage by a mortgagee and the substitution of a new mortgage. Between the recordation of the first mortgage and the substituted one, a judgment had been entered against the mortgagor which appeared to take priority over the substituted mortgage. In an action to reinstate the first mortgage to its original priority, the mortgagee asserted that his release of the first mortgage was a mistake in that he did not intend to lower the priority of his mortgage to a subsequent indebtedness of the mortgagor. The Court permitted the correction of the mistake.

*Bond* dealt with the mistaken release of a mortgage, and articulates the rule that in Maryland, "[t]he doctrine thus established is, that 'a subsequent mortgagee [or purchaser], whose rights existed at the time of the release, cannot object to the prior mortgagee being restored to his rights. Of course, *the mortgage cannot be restored as against one who has in good faith purchased the property after cancellation,* or has advanced money upon it upon the faith of a clear record title.' " 65 Md. at 316, 4 A. at 281 (emphasis supplied).

The position taken by the Court of Appeals regarding the mistaken release of mortgages is widely accepted. *See* 2 G. Glenn, *Mortgages* § 338 (1943); 3 G. Glenn, *Mortgages* § 384 (1943); 2 L. Jones, *Law of Mortgages* § 1237 (8th ed. 1928); 5 H. Tiffany, *The Law of Real Property* § 1493 (3rd ed. 1939).

See also *Conservative Life Insurance Co. v. National Exchange Bank*, 114 W. Va. 271, 273, 171 S. E. 530, 531 (1933).

While the factual postures of *Bennetto and Bond* are different from that now before us, the concept involved in resolving the problem is the same. When, as here, a parcel of land is the subject of a recorded mortgage and the mortgage is mistakenly released, a court of equity will not reinstate the mortgage if the parcel has passed to a *bona fide* purchaser in the interim. If, however, part of the parcel still remains in the possession of the mortgagors, equity will reinstate the mortgage as to that part of the property only.

Appellant also contends that the chancellor reformed the mortgage when he increased the interest rate from five (5) per centum per annum to eight (8) per centum per annum. It is, of course, true that the chancellor did modify the interest rate as alleged by the appellant, but his action was taken as the direct result of uncontradicted evidence that the increased interest rate had been agreed upon by the parties at the time of the signing of the July 1, 1971, note.[7] The testimony was that the appellant and her then husband, a co-defendant, were of the opinion that the appellee was entitled to raise the then five (5) per centum interest, particularly in view of the prevailing interest rate and her forbearance to foreclose the mortgage. In sum, the appellant received that to which she had agreed, and the chancellor was no more than an instrument which gave vitality to that agreement.

There is some confusion as to the current status of the mortgage, but that is easily resolved. The nullification of the release and the restoration of record of the mortgage places the ownership of the mortgage in the assignee, Provident State Bank. The order does not purport to oust the bank of

---

7. Notwithstanding the mistaken release of the mortgage, the appellee could have proceeded against the appellant and Robert Van Schaik in an action grounded on the note. Inasmuch as the note specified the full amount of the debt as of July 1, 1971, interest at 8%, and was executed under seal, no question of limitations or "laches" would appear to have been involved. Why this seemingly somewhat easier course of action was not pursued is not apparent from the record.

title. Inasmuch as the bank admits that the loan, for which the assignment of the mortgage served as collateral, has been paid, all that need be done is for the bank to reassign the mortgage to the appellee.[8]

We think the record in the instant case is such as to leave no doubt in the mind of a reasonable person but that the mortgage was released in error, and the appellant was in no manner prejudiced by that release. In effect, what appellant is contending is that the bank erred to the detriment of the appellee and to the great benefit of the appellant. Because of that "windfall," the error should not be rectified. Such a view has no appeal to a court of equity. *Bennett v. Westfall, supra.*

> *Order affirmed in part, reversed in part and remanded for passage of a decree in accordance with this opinion. Costs to be paid by appellant.*

---

**8.** The procedure for the reassignment is set out in Md. Comm. Law Code Ann. § 9-406. *See* Md. Real Prop. Code Ann. § 7-101 (b) which provides:

"This section is not applicable to a transfer by the mortgagee . . . of his interest in the mortgage as security for payment of an indebtedness or performance of an obligation. Such a transfer is governed by Title 9 of the Uniform Commercial Code[.]"