In re Maria Jill GREEN, Debtor.

Maria Jill Green, Plaintiff/Counter–
Defendant

v.

HSBC Mortgage Services, Inc.,
Defendant/Cross–Claim
Defendant

and

Chase Home Finance, LLC., Servicer for
Government National Mortgage Asso-
ciation, Defendant/Counter–Plaintiff
and Cross–Claimant.

Bankruptcy 10–30606–TJC.
Adversary No. 10–737.

United States Bankruptcy Court,
D. Maryland.

July 25, 2012.

Christina E. Shin, Christina E. Shin, Esq., Rockville, MD, Mary Park McLean, Nancy S. Grigsby, Bowie, MD, Plaintiff/Counter–Defendant.

Christopher Hamlin, Greenbelt, MD, Kevin R. Feig, BWW Law Group, LLC, Bethesda, MD, Defendant/Cross–Claim Defendant.

## MEMORANDUM OF DECISION

THOMAS J. CATLIOTA, Bankruptcy Judge.

Before the Court is the motion for summary judgment (the "Motion") (Docket No. 38) filed by counter-defendants Maria Jill Green (the "Debtor") and Nancy Spencer Grigsby, chapter 13 trustee (the "Trustee" and together with the Debtor, the "Plaintiffs"). The counter-plaintiff/cross-claimant Chase Home Finance LLC, Servicer for Government National Mortgage Association ("Chase") filed an opposition and cross-motion for summary judgment (the "Cross–Motion") (Docket No. 39). A hearing was held on February 9, 2012 to consider the Motion and Cross–Motion. Post-hearing briefs were filed by the Debtor on February 23, 2012 (Docket No. 49), the Trustee on February 27, 2012 (Docket No. 53) and Chase on March 5, 2012 (Docket No. 54). No further hearing is necessary. For the reasons set forth herein, the Cross–Motion will be granted.

### Material Facts Not in Dispute

On September 7, 2010, the Debtor filed a voluntary petition for relief under chapter 13 of the Code. Shortly thereafter on September 30, 2010, the Debtor commenced the instant adversary proceeding against Defendant HSBC Mortgage Services, Inc. ("HSBC") to determine the secured status of its claim. The Debtor filed the amended complaint (the "Complaint") on October 4, 2010 against HSBC, who had filed a proof of claim in the amount of $63,462.66 in the Debtor's bankruptcy case. Case No. 10–30606, Claim No. 2–1. The claim is secured by the Debtor's real property located at 14136 Reverend Rainsford Court, Upper Marlboro, Maryland 20772 (the "Property"). The Complaint seeks a determination of the validity, priority, and extent of HSBC's lien against the Property.

The material facts pertinent to this adversary proceeding are not in dispute. On December 21, 2005, the Debtor signed a purchase money note and deed of trust in the amount of $260,000 in favor of Indy-Mac Bank, F.S.B. The note was secured by a first priority deed of trust against the Property, which was recorded on February 1, 2006 in the land records of Prince George's County, Maryland (the "IndyMac First DOT"). The Debtor also signed a second promissory note in the amount of $65,000 and granted a second priority deed of trust in favor of IndyMac, which deed of trust was also recorded on February 1, 2006 (the "IndyMac Second DOT").

Chase is the servicer of a loan obtained by the Debtor on June 4, 2008 from Government National Mortgage Association. This refinance loan in the original principal amount of $274,050 was provided by First Horizon Home Loans, a Division of First Tennessee Bank ("First Horizon"). The Debtor signed a deed of trust securing the loan (the "First Horizon DOT"). The First Horizon DOT was intended to provide a first priority lien against the Property in favor of First Horizon. The proceeds of the refinance loan were applied to satisfy the IndyMac First DOT. A copy of the certificate of satisfaction for the IndyMac First DOT was filed in the land records on June 13, 2008. However, for unknown reasons, the First Horizon DOT was never recorded. The IndyMac Second DOT was not paid off by the First Horizon loan and remained recorded in the land records. In 2008, the IndyMac Second DOT was transferred to HSBC.

Subsequently on August 4, 2010, First Horizon filed a complaint (the "State Court

Action") against the Debtor and HSBC in the Circuit Court for Prince George's County, Maryland requesting a declaratory judgment that the First Horizon DOT is, *nunc pro tunc*, a valid and enforceable lien on the Property under the equitable legal theories of equitable mortgage and equitable subrogation. *First Horizon Home Loans v. Maria Jill Green*, Case No. CAE 10–24006.

The Debtor then filed her chapter 13 petition and shortly thereafter the instant adversary proceeding against HSBC to determine the secured status of its claim. On October 20, 2010, Chase, who now holds the First Horizon DOT and Promissory Note, filed its initial secured proof of claim in the Debtor's case in the amount of $270,063.23.[1] Case No. 10–30606, Claim No. 6–1. The Debtor stated in the original complaint in this adversary proceeding that Chase allegedly held a secured first deed of trust against the Property in the amount of $267,571. The Debtor sought to value the Property at $225,156 and asked the Court to determine that the IndyMac Second DOT in the amount of $64,041 was avoidable under 11 U.S.C. § 506[2] of the Bankruptcy Code. On December 16, 2010, the Debtor and HSBC entered into a consent order resolving this adversary proceeding (Docket No. 14). HSBC conceded that the First Horizon DOT lien exceeds the fair market value of the Property. Thus, pursuant to § 506, HSBC's claim was wholly unsecured and would be treated accordingly under the Debtor's chapter 13 plan.

On July 18, 2011, in the adversary proceeding, the Debtor filed a motion to va-

cate the consent order (Docket No. 16) arguing that because Chase's lien was not perfected, HSBC holds the senior lien, which is not subject to strip off pursuant to 11 U.S.C. § 506. Immediately thereafter on July 20, 2011, Chase filed a motion to intervene, which was granted by the Court on September 13, 2011.

Chase filed an answer to the complaint and counterclaim against the Plaintiffs and cross-claim against HSBC on September 13, 2011. Chase is seeking declaratory judgment that the First Horizon DOT has a first lien position against the Property. Alternatively, Chase seeks to establish that the First Horizon DOT is equitably subrogated to the first lien position that the IndyMac First DOT held. The last two counts request an equitable mortgage and a constructive trust. The Debtor and the Trustee then filed the Motion; prior to entering into the consent order, HSBC filed an answer to the Complaint, however, HSBC has failed to respond to the cross-claim asserted against it by Chase.

### Conclusions of Law

The parties agree there are no material facts in dispute and the matter is ripe for summary judgment. Therefore, the Court will only briefly address the summary judgment standards:

A court may award summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir.

---

1. The claim was thereafter amended multiple times. Chase's most recent proof of claim was filed on March 22, 2011 as an unsecured claim in the amount of $270,063.23. The Debtor's objection to that amended proof of claim was filed on March 25, 2011 and remains pending (Docket No. 51).

2. Unless otherwise noted, all statutory references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, as currently in effect.

1999). In evaluating a summary judgment motion, a court "must consider whether a reasonable [factfinder] could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the nonmovant." *Apex*, 190 F.3d at 633. In doing so, a court is not entitled to either weigh the evidence or make credibility determinations. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). If the moving party is unable to demonstrate the absence of any genuine issue of material fact, summary judgment is not proper and must be denied. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

*Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d 345, 351–352 (4th Cir.2007).

Here, Chase contends that it is entitled under the doctrine of equitable subrogation to assert the rights under the IndyMac First DOT. Plaintiffs, however, contend that the Trustee's rights under § 544(a)(3)—those of a bona fide purchaser for value without notice—defeat Chase's claim for equitable subrogation. Chase responds that the filing of the State Court Action constitutes a *lis pendens* against the Property that defeats Plaintiffs' § 544(a)(3) claim because it put a prospective purchaser on notice of the equitable subrogation claim. Plaintiffs counter that the *lis pendens* is an avoidable preference under § 547, and once avoided, § 544(a)(3) defeats Chase's equitable subrogation claim or, at least, results in the Trustee holding an interest in the Property superior to Chase's interest under the IndyMac First DOT. Thus, the ultimate issue before the Court is whether the *lis pendens* is an avoidable preference under § 547 and, if so, what is the effect of avoidance on Chase's equitable subrogation claim.

For the reasons that follow, the Court concludes that Plaintiffs' effort to defeat Chase's equitable subrogation claim by avoiding the *lis pendens* as a preferential transfer must fail. The Court therefore concludes that Chase is entitled to assert its equitable subrogation rights.

### Equitable Subrogation, Lis Pendens and § 544(a)(3).

Equitable subrogation is a well-established and accepted legal doctrine that is widely applied in law and is common in bankruptcy. Subrogation is broadly defined as the "substitution of one person in the place of another with reference to a lawful claim or right." *Rinn v. First Union National Bank of Maryland (Rinn)*, 176 B.R. 401, 407 (D.Md.1995) (citation omitted). The doctrine is governed by equitable principles and is "intended to provide relief against loss to a meritorious creditor who has paid the debt of another." *Id.* The doctrine provides that one who pays the lien of another and takes a new lien as security will be subrogated to the rights of the first lien holder as against any intervening lien holders. *G.E. Capital Mortgage Services v. Levenson*, 338 Md. 227, 657 A.2d 1170, 1175 (1995).

"Once applied, subrogation places the party subrogated in the shoes of the creditor .... [and][t]he party acquires all rights, securities, and remedies the creditor has against the debtor and is [regarded] as constituting one and the same person with the creditor whom he succeeds." *Rinn*, 176 B.R. at 408 (internal quotation and citation omitted). As the Supreme Court summarized: "One who rests on subrogation stands in the place of one whose claim he has paid, as if the payment giving rise to the subrogation had

not been made." *United States v. Munsey Trust Co.*, 332 U.S. 234, 242, 108 Ct.Cl. 765, 67 S.Ct. 1599, 1603, 91 L.Ed. 2022 (1947).

The court in *Rinn* went on to explain that:

> Courts have traditionally applied the doctrine of subrogation in the context of one who pays off a mortgage or encumbrance which the principal debtor has failed to discharge. As the court stated in *Levenson v. Capital Mortgage*, 101 Md.App. 122, 643 A.2d 505, 510 (1994): [T]he weight of authority extends the application of the doctrine of equitable subrogation to situations in which the initial and refinancing lenders are not the same, *provided the refinancing lender's money is intended to be used, and is used, to eliminate a specific encumbrance, and the refinancing lender intended "to get as security for his loan* either the land free and clear of the encumbrance or else *the benefit of the encumbrance itself" rather than rely upon the general credit of the mortgagor.*

*Rinn*, 176 B.R. at 408–09 (emphasis in original).

■ Here, the undisputed facts make out a *prima facie* case that Chase is entitled under the doctrine of equitable subrogation, to assert the rights under the Indy-Mac First DOT. The funds from the First Horizon loan and secured by the First Horizon DOT were intended to be used, and in fact were used, to satisfy the Indy-Mac First DOT. Chase alleges, and the Plaintiffs do not dispute, that IndyMac, as the holder at the time of the refinance of both the IndyMac First DOT and the IndyMac Second DOT, understood that the proceeds from the First Horizon Loan were to be used to pay off the IndyMac First DOT and that First Horizon was to receive a first priority deed of trust.[3] The certificate of satisfaction filed as to the IndyMac First DOT as well as the settlement sheet from the First Horizon loan indicate that the parties intended the First Horizon loan to pay off the IndyMac First DOT. All parties understood that the First Horizon DOT was to be timely recorded, and the reason it was not recorded is unknown in the land records. These undisputed facts make out a claim for equitable subrogation.

The Plaintiffs seek to avoid Chase's equitable subrogation claim under § 544 of the Bankruptcy Code. Section 544(a)(3) provides, in pertinent part:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3).[4]

■ Pursuant to this provision, a trustee is given the rights and powers of a bona fide purchaser of real property if, at

---

3. It does not appear that HSBC, as the holder of the IndyMac Second DOT, disputes these allegations as it has chosen not to participate in this action.

4. Under the framework of § 544, § 544(a)(1) and (3) pertain to real estate; § 544(a)(2) pertains to personalty. *See, e.g., In re McLean Industries, Inc.*, 84 B.R. 340, 347 n. 4 (Bankr. S.D.N.Y.1988).

the time the bankruptcy case commenced, a hypothetical buyer could have obtained bona fide purchaser status. *In re Michigan Lithographing Co.*, 997 F.2d 1158, 1159 (6th Cir.1993). "The purpose of § 544 is to arm the trustee with sufficient powers to gather in the property of the estate. Thus, the trustee is considered a *bona fide* purchaser of real property in the bankruptcy estate and may avoid obligations of the debtor that are voidable by such a purchaser." *In re Halabi*, 184 F.3d 1335, 1337 (11th Cir.1999) (citing 11 U.S.C. § 544(a)(3)). A trustee's avoidance powers as a bona fide purchaser is determined by state substantive law. *Glanz v. RJF International Corp.*, 205 B.R. 750, 753 (Bankr.D.Md.1997) (The extent to which a trustee may exercise rights under § 544(a) is governed by applicable state law.).

■■■■■ Under Maryland substantive law, a bona fide purchaser for value is someone who purchases real property without notice or knowledge of any infirmity in the title. *See Leet v. Totah*, 329 Md. 645, 620 A.2d 1372, 1380–1381 (1993). "Where a grantee accepts conveyance of property with actual knowledge that there has been a prior sale of part of that property, he is not a bona fide purchaser, notwithstanding the fact that the prior deed was not recorded.... Even constructive notice of prior unrecorded equities will preclude the grantee from being a bona fide purchaser." *Lewis v. Rippons*, 282 Md. 155, 383 A.2d 676, 680 (1978).

Constructive notice that precludes a grantee from being a bona fide purchaser can result from a *lis pendens*. The rationale behind the common law doctrine of *lis pendens* is that:

> [T]he law does not allow litigant parties to give to others, pending the litigation, rights to the property in dispute, so as to prejudice the opposite party. Where a litigation is pending between a plaintiff and a defendant as to the right to a particular estate, the necessities of mankind require that the decision of the court in the suit shall be binding, not only on the litigant parties, but also on those who derive title under them by alienations made pending the suit, whether such alienees had or had not notice of the pending proceedings.

2 J. Pomeroy, *A Treatise on Equity Jurisprudence*, § 632 (5th ed. S. Symons 1941), pp. 727–28.

■■■ The filing of the State Court Action, filed in the Circuit Court of Prince George's County, Maryland constituted a *lis pendens* on the Property. *See* Md. Rule 12–102(a) and (b).[5] Any subsequent transferee of the Property was on notice of the facts giving rise to Chase's equitable subrogation claim and could not be a bona fide purchaser without notice of the claim. The *lis pendens* therefore defeats the Trustee's claim under § 544(a)(3).

### Unjust Enrichment.

■■■ Plaintiffs contend that equitable subrogation is intended to prevent unjust

---

**5.** Maryland Rule 12–102(a) describes the scope of *lis pendens* in Maryland,

(a) Scope. This Rule applies to an action filed in a circuit court or in the United States District Court for the District of Maryland that affects title to or a leasehold interest in real property located in this State.

Subsection (b) refers to real property:

(a) Creation—Constructive notice. In an action to which the doctrine of lis pendens

applies, the filing of the complaint is constructive notice of the lis pendens as to real property in which the county in which the complaint is filed. In any other county, there is constructive notice only after the party seeking the lis pendens files either a certified copy of the complaint or a notice giving rise to the lis pendens, with the clerk in the other county.

enrichment. They further contend that the doctrine should not apply here because the Debtor's obligations exceed the value of the Property. They argue that in the absence of equitable subrogation, an amount equal to the value of the Property must be paid to the Trustee under the Chapter 13 plan for *pro rata* distribution to all of Debtor's creditors. They argue that the Debtor will not be unjustly enriched because she will not directly retain the value of the Property. The Court disagrees with the premise of Plaintiffs' argument—that a borrower (as opposed to her creditors) must receive the proceeds from the property for equitable subrogation to apply. The application of equitable subrogation is not dependent on whether the equity in the property will be paid to the borrower directly, rather than the borrower's other creditors.

Equitable subrogation cases are often brought as disputes between the lender who claims equitable subrogation and a subsequent secured lien holder, in cases where the total equity in the property is not sufficient to satisfy both claims. *See e.g., Glen Burnie Mut. Sav. Bank v. U.S.,* 733 F.Supp.2d 623 (D.Md.2010); *Egeli v. Wachovia Bank, N.A.,* 184 Md.App. 253, 965 A.2d 87 (2009); *G.E. Capital Mortgage Servs., Inc. v. Levenson,* 338 Md. 227, 657 A.2d 1170 (1995); *Bennett v. Westfall,* 186 Md. 148, 46 A.2d 358 (1946). In these cases, the prevailing creditor is paid first from the property and the losing creditor is often left without being fully repaid. In none of these cases will the borrower receive any proceeds from the property, and that fact is not significant to the court's determination.

This case is such an example. According to the Debtor's schedules, the Debtor contends the Property is worth approximately $200,000. Chase's proof of claim is in the amount of $270,063. HSBC holds a lien against the Property and has filed a proof of claim in the amount of $63,462. If Chase prevails, Chase would hold a first lien position in the Property, all of the value of the Property would be applied to its debt and Chase would hold an unsecured deficiency claim for the balance; HSBC would not receive anything from the Property and would hold a wholly unsecured claim. If Chase does not prevail, HSBC would hold a first lien position in the Property and would be paid in full;[6] Chase would hold an unsecured claim and would share *pro rata* in the balance of the equity in the Property with the Debtor's other creditors. The unjust enrichment if Chase does not prevail would inure to HSBC, who would receive a first lien position where there is no dispute that such a result was not intended, and which would result from the loan made by Chase's predecessor that was intended to have the first lien position.

### *Lis Pendens and § 547.*

The Plaintiffs contend that the *lis pendens* was created during the preference period and is therefore avoidable under § 547 of the Code. Section 547 empowers the trustee to avoid any transfer, including the fixing or perfection of a lien occurring within 90 days of the filing of the bankruptcy petition, if the transfer is due to an antecedent debt or is made while the debtor is insolvent that would allow the creditor to receive more than it would have been paid if the transfer had not occurred in a chapter 7 case. 11 U.S.C. § 547. The Debtor further contends that once the *lis pendens* is avoided, § 544 comes back into play and allows the

---

**6.** Consistent with Plaintiffs' position here, the Debtor's pending chapter 13 plan proposes to place HSBC in first lien position on the Property.

Plaintiffs to avoid the equitable subrogation claim. This Court disagrees.

As stated above, the critical fact that defeats the Trustees status as a bona fide purchaser under § 544 is the notice provided by the *lis pendens*. By the terms of § 544(a), the Trustee's standing is determined "as of the commencement of the case." 11 U.S.C. § 544(a). As of the commencement of the Debtor's case, under Maryland law all parties were on notice of Chase's equitable subrogation claim as a result of the filing of the State Court Action. The avoidance of the *lis pendens* as a preferential transfer could not have the effect of retroactively erasing that notice— the proverbial bell cannot be unrung.

The facts in this case are somewhat akin to those in *Logan v. CitiMortgage, Inc. (In re Schubert)*, 437 B.R. 787 (Bankr.D.Md. 2010) (Keir, C.J.). There the debtors obtained a refinance of their deed of trust loan with CitiMortgage. CitiMortgage waited approximately one month to file its deed of trust in the land records. The filing occurred during the prepetition preference period. The trustee sought to avoid the recordation of the deed of trust pursuant to § 547. The court held that, although CitiMortgage's recordation of the deed constituted a preferential transfer, it nevertheless was entitled to be equitably subrogated to the original deed of trust, which was paid off in full outside the preference period.

As pertinent here, Chief Judge Keir held that, because CitiMortgage recorded its deed of trust prior to the filing of the bankruptcy case, relief under § 544 was not available to the trustee. *Id.* at 791, n. 4. The Court specifically rejected the notion that the avoidance of the recordation of the deed as a preferential transfer could reinvigorate the trustee's powers under § 544.

Furthermore, the avoidance of the preferential transfer under Sections 547 and 550 to the extent the lien is avoided, does not erase the original recordation and the notice it provided to other creditors. The court rejects any argument that because avoidance of the preferential transfer, CitiMortgage would hold an unrecorded lien which the Trustee is entitled to avoid under the strong-arm powers of Section 544 which essentially serve to cut off unperfected liens and security interests at the time of the bankruptcy petition. The existence of CitiMortgage's interest in the Property would still be apparent from the land records despite avoidance and therefore provides notice sufficient to defeat the right to avoid arising under Section 544. *In re Schubert*, 437 B.R. at 796–97. This rationale is equally applicable here.

The Plaintiffs rely on *Wells Fargo Funding v. Gold*, 432 B.R. 216 (E.D.Va. 2009) in support of their contention that the *lis pendens* should be avoided as a preferential transfer pursuant to § 547. Their reliance is misplaced, however, as the factual situation here is distinguishable from *Gold*. In *Gold*, the bankruptcy court granted the chapter 11 trustee's motion to sell free and clear of liens over the objections of several creditors. Those creditors had been swindled by the debtor into purchasing loans on his residence; however, the deeds of trust were never recorded. Prior to the filing of the petition, Wells Fargo, one of the creditors, filed a notice of *lis pendens*.

The bankruptcy court ruled that the trustee could not utilize § 544(a)(3) to avoid Wells Fargo' unrecorded deed of trust because the *lis pendens* constituted notice to defeat the trustee's status as a bona fide purchaser. With respect to § 547, the court held that the filing of a *lis pendens* does not operate as a transfer or

create a lien. *Id.* at 223. It held, however, that Wells Fargo's successful prosecution of the suit underlying the *lis pendens* would result in a transfer, and that transfer would relate back to the date of the filing of the *lis pendens* under Virginia law. Thus, the filing of a *lis pendens* "does not create a lien, but it is a 'consequential action' which § 547 permits the trustee to avoid, provided it occurs within the 90–day period." *Id.* at 224. These determinations by the bankruptcy court were affirmed on appeal.

Significantly, in *Gold,* the lender was not seeking equitable subrogation arising from a transaction that occurred prior to the preference period. In *Gold,* the legal effect of the *lis pendens* was twofold: (1) it provided notice sufficient to defeat the trustee's status under § 544; and (2) if the lender were successful in the underlying suit, the resulting transfer would relate back to the date of the filing of the *lis pendens,* and that date was squarely within the preference period. It is for the latter reason that the court avoided the *lis pendens* under § 547, not the former. Here, to be sure, the *lis pendens* provided notice sufficient to defeat the trustee's status under § 544. However, once Chase is successful on its equitable subrogation suit, its rights relate back to the date it issued the loan and paid off the then Indy-Mac First DOT, and that date is outside the preference period. The avoidance of the *lis pendens,* even if available under § 547, would not defeat Chase's claim because Chase's remedy rests on equitable subrogation, not the recordation of its deed of trust.[7]

### Conclusion

For the foregoing reasons, Chase is entitled to be equitably subrogated to the position of the IndyMac First DOT, and

---

7. For this reason, the Court makes no determination as to whether a *lis pendens* can be

summary judgment shall be entered in its favor. A separate order shall issue.

---

avoided under § 547 if filed within the preference period in a case such as *Gold.*